UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DAVID COTTO, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:24-CV-921-CCB-SJF |
| CHRISTINA REAGLE, et al., | |
| Defendants. | |

OPINION AND ORDER

David Cotto, a prisoner without a lawyer, filed a complaint under 42 U.S.C. § 1983. (ECF 1.) As required by 28 U.S.C. § 1915A, the court must screen this pleading and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to state a claim that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (citation omitted). A claim has facial plausibility when the plaintiff pleads factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Cotto is proceeding without counsel, the court must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Cotto was transferred from Miami Correctional Facility ("MCF") to the Westville Control Unit ("WCU"), a long-term segregation unit, in May 2024. His complaint is lengthy and somewhat difficult to parse, but it can be discerned that he raises sprawling

allegations against 27 defendants pertaining to events occurring at both MCF and WCU, including staff located at those two facilities and Indiana Department of Correction ("IDOC") central office officials located in Indianapolis. Among other claims, he asserts that he was improperly denied a job at MCF based on a false allegation that he was in a gang; he was not permitted to participate in group therapy and was otherwise denied proper medical care by staff at MCF; he was subject to unlawful retaliation and Equal Protection violations at MCF in the form of additional cell searches to which other inmates were not subjected; he did not receive adequate due process protections in connection with his transfer to WCU; he has been denied a due process hearing regarding the reasons he is being held at WCU; he is being housed under unsanitary conditions of confinement; and he is presently in need of mental health treatment to address thoughts of suicide. He seeks damages against multiple prison employees and IDOC officials as well as various forms of injunctive relief.

Unrelated claims against different defendants belong in different lawsuits. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). As the Seventh Circuit has explained:

> A buckshot complaint that would be rejected if filed by a free person—
> say, a suit complaining that A defrauded the plaintiff, B defamed him, C
> punched him, D failed to pay a debt, and E infringed his copyright, all in
> different transactions—should be rejected if filed by a prisoner. . . .
> M]ultiple claims against a single party are fine, but Claim A against
> Defendant 1 should not be joined with unrelated Claim B against
> Defendant 2.

*Id.*; *see also Owens v. Evans*, 878 F.3d 559, 561 (7th Cir. 2017) (observing that prisoner-plaintiff's "scattershot strategy" of filing an "an omnibus complaint against unrelated

2

defendants . . . is unacceptable"). The fact that all of Cotto's claims stem from events occurring at IDOC facilities does not mean he can lump them together in one lawsuit. The Seventh Circuit has urged district courts to be alert to this issue both to "ensure manageable litigation" and to prevent prisoners from avoiding the provisions of the Prison Litigation Reform Act, including the filing fee and three-strike provisions. *Henderson v. Wall*, No. 20-1455, 2021 WL 5102915, at *1 (7th Cir. Nov. 3, 2021). Cotto's complaint, as drafted, raises unrelated claims about discrete issues that cannot be properly or manageably litigated together in one lawsuit.

Ordinarily, when a plaintiff files a complaint asserting unrelated claims, the court's preference is to allow him an opportunity to pick which related claims he wants to pursue. Here, however, Cotto claims to have a pressing need for mental health treatment and asserts that he is suicidal. In light of his assertions, the court will proceed to screen his claim pertaining to his mental health treatment and will dismiss his other claims without prejudice. If he wishes to pursue these unrelated claims, he must do so in a separate lawsuit (or lawsuits), subject to the usual constraints of the Prison Litigation Reform Act.[1]

Regarding his denial of medical care claim, he asserts that he has a long history of mental illness and has been diagnosed with bipolar disorder, "split personality disorder," depression, and other illnesses. It can be discerned from the complaint and

---

[1] The events underlying the complaint appear to have occurred in April 2023 and after. If Cotto acts diligently, he should have sufficient time to assert these claims in a new lawsuit or lawsuits before the expiration of the two-year limitations period. *See Dorsey v. Varga*, 55 F.4th 1094, 1107 (7th Cir. 2022). (court may dismiss unrelated claims "if doing so will not prevent the plaintiff from timely refiling those claims"). The court expresses no opinion about the potential merit of any of these unrelated claims.

attachments that he receives psychiatric care at the prison for these issues. He claims that the treatment he is presently receiving is not adequate to address his mental health issues, and that his mental health has deteriorated significantly since his arrival at WCU. He claims to be hearing voices and "seeing shadows," and to be at risk of suicide. He asserts that he tried to commit suicide while at WCU by "overdosing on pills."

Inmates are entitled to adequate medical care under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To state a claim for the denial of this right, a prisoner must allege (1) he had an objectively serious medical need and (2) the defendant acted with deliberate indifference to that medical need. *Id.* A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious even a lay person would recognize as needing medical attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).

On the second prong, deliberate indifference represents a high standard. "[N]egligence, gross negligence, or even recklessness as the term is used in tort cases is not enough" to state an Eighth Amendment claim. *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020). Instead, the inmate must allege "a culpability standard akin to criminal recklessness." *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021). Inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267. This includes appropriate measures to address the risk of self-harm from suicide. *Quinn v. Wexford*

*Health Sources, Inc.*, 8 F.4th 557, 565 (7th Cir. 2021). The court must "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and quotation marks omitted). In effect, the Eighth Amendment protects prisoners from "grossly inadequate medical care." *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1033 (7th Cir. 2019).

Giving Cotto the inferences to which he is entitled at this stage, he has alleged a serious medical need in connection with his mental health problems. On the second prong, he claims that Tori Halcarz, a mental health provider at WCU, has been dismissive of his mental health problems and has gone so far as to falsify records in an effort to downplay the extent of his problems. He claims his mental health has deteriorated significantly while under her care. He will be permitted to proceed further on a claim against this provider.[2]

He also seeks to hold certain officials liable, specifically, the "John or Jane Doe Director of Mental Health" at WCU and two officials at IDOC's central office in Indianapolis. There is no *respondeat superior* liability under 42 U.S.C. § 1983, and these officials cannot be held liable solely because of their positions or because they supervise other medical staff. *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018); *Burks v. Raemisch*,

---

[2] He mentions other mental health providers, such as Baili Appleton, Dennis Sipes, Lauren Rogers, and Ms. Martinez (first name unknown), but he indicates that these providers are located at MCF. (*See* ECF 1 at 2.) His claims about events occurring at MCF are being dismissed without prejudice as unrelated. He also names several high-ranking IDOC officials as defendants, but the court understands these defendants to be linked to his claims that he was denied due process in connection with his transfer from MCF to WCU and his detention at WCU. These claims are also being dismissed without prejudice as unrelated.

555 F.3d 592, 595 (7th Cir. 2009). There is an insufficient basis in the complaint to plausibly infer that these high-ranking officials had any personal involvement in Cotto's mental health care, or that they made decisions about his care that could be deemed deliberately indifferent under governing standards. He will not be permitted to proceed against these high-ranking officials.

He also sues Wexford of Indiana, a private company that previously provided medical services at Indiana prisons. Wexford's contract with IDOC ended in July 2021 and it was replaced by Centurion Health. *See Baldwin v. Westville Corr. Facility*, No. 3:21-CV-682-DRL-MGG, 2021 WL 5759136, at *2 (N.D. Ind. Dec. 3, 2021). Cotto's claim about his mental health treatment at WCU pertains to events occurring after May 2024 (when he was transferred to that facility), and at that point Wexford was no longer responsible for medical care at Indiana prisons.

Assuming he could name the right corporate entity, a private company cannot be held liable for damages simply because it employed a medical professional who engaged in wrongdoing. *J.K.J. v. Polk Cty.*, 960 F.3d 367, 377 (7th Cir. 2020). A private company performing a public function can be sued under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), but only if the "unconstitutional acts of their employees . . . were carried out pursuant to an official custom or policy." *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008) (citations omitted). The purpose of this requirement is to "distinguish between the isolated wrongdoing of one or a few rogue employees and other, more widespread practices." *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 654 (7th Cir. 2021). To allege a plausible *Monell* claim, the plaintiff must

6

identify an official corporate policy that caused him injury. *Grieveson*, 538 F.3d at 771. Alternatively, a plaintiff pursuing an official custom theory "must allege facts that permit the reasonable inference that the practice is so widespread so as to constitute a governmental custom." *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017).

Cotto states in general terms that he was injured by a policy, but he does not identify what the official corporate policy was that caused him injury. Nor does he include factual content plausibly suggesting the existence of a widespread custom of unconstitutional conduct within the company that employs medical staff at Indiana prisons. Rather, he describes his own situation, in which individuals responsible for his care have allegedly failed to provide him with proper treatment. This does not state a plausible claim under *Monell*.

He also claims to have ongoing mental health concerns, including thoughts of suicide, that are not being adequately addressed. The Warden has both the authority and the responsibility to ensure that inmates at his facility are provided medical care to address serious medical needs as required by the Eighth Amendment. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). Cotto will be allowed to proceed on an Eighth Amendment claim against the Warden in his official capacity for injunctive relief related to his ongoing need for mental health treatment.

He separately moves for a preliminary injunction. (ECF 3.) The motion is not a model of clarity, but he appears to seek additional mental health treatment and/or a transfer out of WCU due to his deteriorating mental health. (ECF 3.) "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted

7

unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

On the first prong, "the applicant need not show that [he] definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.* at 763 (quotation marks omitted). In assessing the merits, the court does not simply "accept [the plaintiff's] allegations as true" or "give him the benefit of all reasonable inferences in his favor, as would be the case in evaluating a motion to dismiss on the pleadings." *Doe v. Univ. of S. Indiana*, 43 F.4th 784, 791 (7th Cir. 2022). Instead, the court must endeavor to assess the merits as "they are likely to be decided after more complete discovery and litigation." *Id.*

On the second prong, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. Mandatory preliminary injunctions—"those requiring an affirmative act by the defendant"—are "cautiously viewed and sparingly issued." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). Additionally, in the

8

prison context, the court's ability to grant injunctive relief is limited. "[I]njunctive relief to remedy unconstitutional prison conditions must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (citation and internal quotation marks omitted); *see also Rasho v. Jeffreys*, 22 F.4th 703, 711-13 (7th Cir. 2022) (outlining strict limitations on granting injunctive relief in correctional setting).

At present, the court only has Cotto's version of events and it is difficult to determine on this limited record whether he has a likelihood of success in proving that he is receiving constitutionally inadequate medical care. The attachments to his complaint suggest that he is receiving regular visits from mental health staff and is under the care of a prison psychiatrist. To the extent he is asking to be transferred out of WCU, the court must consider the Supreme Court's admonition that "[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). Prisoners do not have a constitutional right to the housing assignment of their choice, and where best to house a prisoner is ordinarily a matter that is committed to the discretion of prison officials. *See Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996). In light of the deference owed to prison officials and the limitations on granting injunctive relief in the

correctional setting, the court will order the Warden to respond before taking further action on Cotto's request for a preliminary injunction.

For these reasons, the court:

(1) GRANTS the plaintiff leave to proceed against Tori Halcarz in her personal capacity for money damages for deliberate indifference to his mental health issues and thoughts of suicide while in Westville Control Unit in violation of the Eighth Amendment;

(2) GRANTS the plaintiff leave to proceed against the Warden of Westville Correctional Facility in his official capacity for injunctive relief related to his ongoing need for mental health treatment and thoughts of suicide;

(3) DISMISSES John or Jane Doe IDOC Director of Mental Health Central Office, John or Jane Doe IDOC Executive Director of Mental Health Central Office, John or Jane Doe Director of Mental Health Westville Correctional Facility, and Wexford of Indiana as defendants for the reasons outlined;

(4) DISMISSES WITHOUT PREJUDICE the plaintiff's claims against Christina Reagle, Bill Wilson, Jack Hendrix, Brian English, Aaron Smith, Katina Murray, Montrel McGee, Nathanael Angle, Niles Wise, Joshua Snow, Baili Appleton, Lauren Rogers, Dennis Sipe, Ms. Martinez, Mr. Johnson, Ryder Stoff, Tracy Cornett, Mr. Rippe, Ms. Mapps, Mr. Watts, and Ms. Ivers as unrelated;

(5) DISMISSES all other claims;

(6) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on)

the Warden of Westville Correctional Facility by email to the Indiana Department of Correction with a copy of this order, the complaint (ECF 1), and the motion for a preliminary injunction (ECF 3) pursuant to 28 U.S.C. § 1915(d);

(7) DIRECTS the clerk to fax or email a copy of the same documents to the Warden of Westville Correctional Facility at Westville Correctional Facility;

(8) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Tori Halcarz at Centurion Health and to send her a copy of this order and the complaint (ECF 1) pursuant to 28 U.S.C. § 1915(d);

(9) ORDERS the Indiana Department of Correction and Centurion Health to provide the United States Marshal Service with the full name, date of birth, and last known home address of any defendant who does not waive service, to the extent such information is available;

(10) ORDERS the Warden to file and serve a response to the plaintiff's motion for a preliminary injunction no later than **December 18, 2024**, with supporting documentation and declarations from staff as necessary, addressing the plaintiff's current mental health status, including whether he poses a risk of suicide, and the steps being taken to address these issues; and

(11) ORDERS the Warden and Tori Halcarz to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on  November 15, 2024

                                              s/Cristal C. Brisco
                                              JUDGE
                                              UNITED STATES DISTRICT COURT